United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH L., JAMES L., and OLIVIA L., individually and as representatives of the class of similarly situated individuals; and L.M. and N.M. as guardians of M.M., and as representatives of the class of similarly situated individuals;<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>AETNA LIFE INSURANCE CO.,<br><br>　　　　Defendant. | Case No. C 13-2554 SC<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.　INTRODUCTION

Now before the Court is Defendant Aetna Life Insurance Co.'s ("Defendant") motion to dismiss the above-captioned Plaintiffs' complaint. ECF Nos. 1 ("Compl."), 24 ("MTD"). The motion is fully briefed. ECF Nos. 27 ("Opp'n"),[1] 29 ("Reply"). The Court finds it

---

[1] In addition to their opposition brief, Plaintiffs attach a declaration from an insurance appeal specialist. They claim that this declaration merely fleshes out their complaint's allegations and illustrates facts they intend to prove. The Court finds otherwise. The declaration asserts new facts not pled in the

1 appropriate for decision without oral argument.  Civ. L.R. 7-1(b).
2 For the reasons explained below, the Court GRANTS Defendant's
3 motion to dismiss, with leave to amend.

**II.   BACKGROUND**

This is a putative class action concerning an insurance dispute, in which Plaintiffs challenge Defendant's denials of coverage under two different employer-sponsored health benefits plans.[2]  See Compl. ¶¶ 1-4.  Plaintiffs Olivia L. and M.M. (the "Treated Plaintiffs") obtained residential mental health treatment at two different treatment facilities located in Utah, and Defendant, which administrated or insured the benefits plans, denied coverage for those stays because it found that the residential treatment facilities did not satisfy the plans' coverage criteria.  Id. ¶¶ 1-4, 26-27, 30, 32, 34, 42-47.  Specifically, Defendant stated that the facilities in question were not staffed 24/7 with licensed mental health professionals, contrary to the plans' language.

The central issue is whether coverage under Defendant's policies requires a licensed "Behavioral Health Provider/Practitioner" ("BHP") to be on-site 24/7 at the residential treatment facility, in addition to the facility being licensed to provide on-site mental health services.  Defendant maintains that the plans make clear that these are two distinct

---

complaint and is therefore improper.  Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  The Court accordingly STRIKES it.

[2] The plans are distinct, but the disputed language is the same in each.  Accordingly the parties and the Court address the plans together.

requirements.  Plaintiffs assert that the residential treatment facility itself should qualify as a covered BHP, essentially merging the two requirements, or at least that the relevant language is ambiguous.  Plaintiffs do not allege that the residential treatment facilities in question were staffed 24/7 by licensed mental health professionals.

Based on this dispute, Plaintiffs assert two causes of action against Defendant.  The first is a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), a provision of the Employee Retirement Income Security Act ("ERISA").  The second is a claim for declaratory and injunctive relief.  Both claims depend on resolution of the central issue described above.  Defendant moves to dismiss.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).[3]

## IV.  DISCUSSION

Plaintiffs' case depends on how the plans' terms are to be interpreted. Defendant attached summaries of the plans to its motion to dismiss, ECF No. 24 ("Sparks Decl.") Exs. A, B, and the Court takes judicial notice of them as being incorporated by reference into Plaintiffs' Complaint. Fed. R. Evid. 201. The two relevant policy provisions at issue in this case -- the plans' definitions of "Residential Treatment Facility" and BHP -- state:

> Residential Treatment Facility (Mental Disorders)
>
> This is an institution that meets all of the following requirements:
>
> - On-site licensed Behavioral Health Provider 24 hours per day/7 days a week.[4]
> - Provides a comprehensive patient assessment (preferably before admission, but at least upon

---

[3] The Court declines to address the parties' dispute over which ERISA standard of review -- de novo or abuse of discretion -- should apply in this case. Even on a de novo standard, the Court concludes (as explained below) that Defendant's policy is unambiguous, and Defendant's interpretation of its terms is correct. Accordingly, the Court GRANTS the Plaintiffs' motion to file a sur-reply, ECF No. 33, but finds it non-dispositive.

[4] In reference to this bullet point's being the basis of Plaintiffs' exclusion for coverage, the parties and the Court call it the "24/7 Exclusion."

4

- admission).
- Is admitted by a Physician.
- Has access to necessary medical services 24 hours per day/7 days a week.
- Provides living arrangements that foster community living and peer interaction that are consistent with developmental needs.
- Offers group therapy sessions with at least an RN or Masters-Level Health Professional.
- Has the ability to involve family/support systems in therapy (required for children and adolescents; encouraged for adults).
- Provides access to at least weekly sessions with a Psychiatrist or psychologist for individual psychotherapy.
- Has peer oriented activities.
- Services are managed by a licensed Behavioral Health Provider who, while not needing to be individually contracted, needs to (1) meet the Aetna credentialing criteria as an individual practitioner, and (2) function under the direction/supervision of a licensed psychiatrist (Medical Director).
- Has individualized active treatment plan directed toward the alleviation of the impairment that caused the admission.
- Provides a level of skilled intervention consistent with patient risk.
- Meets any and all applicable licensing standards established by the jurisdiction in which it is located.
- Is not a Wilderness Treatment Program or any such related or similar program, school and/or education service.

Behavioral Health Provider/Practitioner

- A licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions.

MTD at 5-6.

To state a claim for benefits under ERISA, plan participants and beneficiaries have to plead facts making it plausible that a provider owes benefits under the plan. See 29 U.S.C. § 1132(a)(1)(B); Iqbal, 556 U.S. at 677. In interpreting an ERISA plan, the Court must apply contract principles derived from state law, guided by policies expressed in ERISA and other federal labor

5

1  law.  Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d
2  982, 985 (9th Cir. 1997).  In doing so, the Court must interpret
3  the plan's terms in an ordinary and popular sense, as would a
4  person of average intelligence and experience.  Id. (citing Evans
5  v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990)).  In
6  resolving disputes over ERISA plans, the Court must look first to
7  the agreement's specific language and determine the parties' clear
8  intent, relative to the context giving rise to the language's
9  inclusion.  Id. (citing Armistead v. Vernitron Corp., 944 F.2d 1287,
10 1293 (6th Cir. 1991)).  Finally, the Court must construe each
11 provision consistently with the entire document such that no
12 provision is rendered nugatory.  Gilliam v. Nev. Power Co., 488
13 F.3d 1189, 1194 (9th Cir. 2007) (citing Richardson, 112 F.3d at
14 985).

15      The Court does not find any of Plaintiffs' arguments
16 compelling.  First, Plaintiffs' interpretation of the plan's plain
17 language does not comport with any logical or legal interpretation
18 of the plan language.  Second, Plaintiffs' reading of Utah law does
19 not appear to support their argument in any event.  Plaintiffs'
20 remaining arguments are also unconvincing.

21      **A.   Plain Language and Interpretation Under ERISA**

22      Plaintiffs contend that because the definition of BHP includes
23 the phrase "licensed organization or professional," a residential
24 treatment center licensed under Utah law -- like the centers where
25 the Treated Plaintiffs stayed[5] -- counts as a BHP that satisfies
26 the Residential Treatment Facility definition's requirement that

---

[5] The parties do not dispute that these facilities were licensed under Utah law, or that Utah law is applicable to the parties' licensure disputes.

6

1  such facilities provide an "[o]n-site licensed Behavioral Health
2  Provider 24 hours per day/7 days a week."  Opp'n at 10-15.  This
3  argument is based on Plaintiffs' contention that the plans' plain
4  terms comport with Plaintiffs' interpretation, points of Utah
5  licensing law (discussed below) aside.
6      On a basic level, Plaintiffs' arguments fail to rebut the
7  plain interpretation of Defendant's plans' two separate
8  requirements that (1) a covered facility must be licensed by the
9  state where it is located and (2) licensed BHPs must be on-site
10 24/7.  If the licensed residential treatment facility is itself the
11 on-site licensed organization per the definition of BHP, as
12 Plaintiffs submit, then there would be no reason for the plans'
13 language to include the 24/7 Exclusion because satisfaction of the
14 plans' licensing requirement would always satisfy the 24/7 BHP
15 requirement.  Richardson, 112 F.3d at 985 (requiring courts to
16 interpret ERISA plans such that no provision is nugatory).
17 Plaintiffs' reading would render the plans' distinct requirements
18 nugatory and incomprehensible, since it would not account for
19 Defendant's having clearly set out two different provisions and
20 defined terms in the requirements.
21     As a matter of law, the Court finds that Plaintiffs' reading
22 does not suit an interpretation of the plan's terms in an ordinary
23 and popular sense.  Defendant's interpretation of the terms is
24 correct.
25     **B.   "Organizations" and Utah Law**
26     The parties also dispute whether Utah law allows residential
27 treatment facilities to qualify as licensed BHPs under Defendant's
28 plans.  Opp'n at 12; MTD at 11 & n.7.  In an attempt to avoid the

7

basic failing described above, Plaintiffs apply a complicated set of Utah licensing rules providing for the licensure of residential treatment facilities staffed by mental health professionals, with unlicensed professionals being supervised at all times by the licensed staff.  Plaintiffs therefore argue that a facility itself can be a BHP simply by meeting Utah's licensing requirements -- the facility would be licensed, and it "provides" mental health services in a way, so according to Plaintiffs, it meets all of the plans' requirements.  Id. at 12-14 (citing Utah Admin. Code Section R510-19-5, -10, -12).  Plaintiffs also contend that Defendant's exclusive interpretation of its plans would render the BHP definition's distinction of "organizations" and "professionals" superfluous.

    This argument is not convincing.  Plaintiffs are correct that the definition of BHP includes organizations that provide diagnostic, therapeutic, or psychological services for behavioral health conditions.  Opp'n at 11-12.  They are also correct that Utah licenses the operation of residential treatment facilities like the ones at issue in this case, and that licensed facilities must employ licensed mental health professionals, at least some of whom must be responsible for supervising any unlicensed staff.  Id. (citing relevant rules).

    However, Plaintiffs still do not overcome the basic interpretative problem in their argument, as discussed above.  If the licensed mental health therapy professionals are always on-site, then the facilities would always comport with both Utah licensing law and the plan's 24/7 requirements, and this point of argument would be unnecessary.  If a facility's staff ever provided

8

1 mental health therapy services absent the supervision of a licensed
2 clinical professional, the treatment facility would contravene both
3 Utah licensing law and the plans' terms requiring 24/7 care.  Utah
4 Admin. Code § R501-19-1 (unlicensed residential treatment facility
5 staff must be supervised by licensed professionals); Utah Code §§
6 58-60-109(1)(a), -111(1) (unlicensed practice of mental health
7 therapy is a felony).  And obviously, a facility alone cannot
8 provide mental health therapy services absent its staff.  The Court
9 finds Plaintiffs' argument here unconvincing.  It relies on far-
10 fetched and illogical readings of the plans in relation to the law.
11      Finally, forbidding the facility itself to qualify as a
12 covered BHP does not render nugatory the "organizations" or
13 "professionals" distinction in the plans' language.  As Defendant
14 notes, the term "organization" must be read in context, and in
15 context, "organizations" here can refer to licensed professional
16 practice groups.  This interpretation is reasonable, and it
17 continues to exclude Plaintiffs' convoluted defense of its
18 facilities-alone argument while still supporting the legal and
19 analytical distinction between organizations and professionals
20 under the plans.

### C. Ambiguity and Remaining Arguments

22      The Court also finds that the plans' terms are unambiguous.
23 Ambiguity exists only when an ERISA plan's provisions are subject
24 to two reasonable competing definitions.  Deegan v. Cont'l Cas.
25 Co., 167 F.3d 502, 507 (9th Cir. 2007).  Plaintiffs claim that an
26 average person of ordinary intelligence and experience could
27 reasonably believe Plaintiffs' interpretation of the plan's
28 language.  The Court is not convinced.  Plaintiffs' interpretation

9

is convoluted and unreasonable. The plan clearly sets out a list of different requirements that an average person would understand to be separate and non-duplicative, not recursive and confusing.

Finally, the Court rejects Plaintiffs' other interpretive arguments. First, the doctrine of contra proferentem -- the contractual doctrine stating that a contract's terms must be construed against the drafter, here Defendant -- does not apply here. There is no ambiguity. See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 539-540 (9th Cir. 1990) (doctrine applies when terms are ambiguous). Second, Plaintiffs' contention that the plan should be interpreted according to their "reasonable expectations" fails because the exclusion was conspicuous. Saltarelli v. Bob Baker Med. Trust, 35 F.3d 382, 387) (9th Cir. 1994) (conspicuous exclusions rebut the "reasonable expectations" argument).

Accordingly, Plaintiffs' ERISA claim is DISMISSED. Plaintiffs' claim for declaratory and injunctive relief is also DISMISSED because it relies on the same theory as the ERISA claim. Both dismissals are without prejudice, so that Plaintiffs can plead facts concerning the 24/7 Exclusion or otherwise amend their pleadings to render their claims plausible.

///
///
///
///
///
///
///
///

## V. CONCLUSION

As explained above, Defendant Aetna Life Insurance Co.'s motion to dismiss the above-captioned Plaintiffs' complaint is GRANTED, and the complaint is DISMISSED with leave to amend. Plaintiffs have thirty (30) days to file an amended complaint. If they do not do so, the Court may dismiss this action with prejudice.

IT IS SO ORDERED.

Dated: December 17, 2013

UNITED STATES DISTRICT JUDGE