1

2

3

4                IN THE UNITED STATES DISTRICT COURT

5              FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7                                    )  Case No. CV 13-2554 SC
                                     )
8    ELIZABETH L., JAMES L., and     )  ORDER GRANTING MOTION TO
     OLIVIA L., individually and as  )  DISMISS
     representatives of the class of )
9    similarly situated individuals; )
     and L.M. and N.M. as guardians  )
10   of M.M., and as representatives )
     of the class of similarly       )
11   situated individuals;           )
                                     )
12          Plaintiffs,              )
                                     )
13      v.                           )
                                     )
14   AETNA LIFE INSURANCE CO.,       )
                                     )
15          Defendant.               )
                                     )
16   _____ )

17

18

19   I.   **INTRODUCTION**

20        Now before the Court is Defendant Aetna Life Insurance Co.'s

21   ("Defendant") motion to dismiss the above-captioned Plaintiffs'

22   first amended complaint.  ECF Nos. 39 ("FAC"), 41 ("MTD").  The

23   motion is fully briefed.  ECF Nos. 46 ("Opp'n"), 47 ("Reply").  The

24   Court finds it appropriate for decision without oral argument.

25   Civ. L.R. 7-1(b).  For the reasons explained below, the Court

26   GRANTS Defendant's motion to dismiss, with leave to amend on two

27   narrow points.

28   ///

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

## II.   **BACKGROUND**

Plaintiffs challenge Defendant's denials of coverage under two employer-sponsored health benefits plans.  Plaintiffs Olivia L. and M.M., both minors, obtained mental health treatment at two different residential treatment facilities located in Utah.  FAC ¶¶ 1-4.  At the times they were treated, Olivia L. and M.M. were covered by health plans or health insurance policies provided through their parents' employers and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Id. ¶¶ 4-9.  Defendant, which administrated or insured those plans, denied Olivia L. and M.M.'s families coverage for those residential stays.  It based its denial on its determination that the residential treatment facilities did not satisfy the plans' requirement that covered facilities be staffed 24/7 with licensed mental health professionals, though the parties appear to agree that the facilities met the plan's other relevant requirements. Id. ¶¶ 1-4, 26-27, 30, 32, 34, 42-47.

The basis of Defendant's denial is the central issue of this case: do the plans demand such 24/7 staffing in addition to the other requirements?  Defendant maintains that they do.  Plaintiffs assert that Defendant's position is unsupported by the plans' plain language.  Plaintiffs also contend, alternatively, that the plans are ambiguous, and that Defendant's inconsistent treatment of similarly situated claimants violates ERISA's fiduciary duty or claims processing requirements. [1]

///

---

[1] The plans are distinct, but the disputed language is the same in each.  Following the parties' convention, the Court addresses the plans singularly for the remainder of this Order.

United States District Court
For the Northern District of California

1    Based on this dispute, Plaintiffs assert two causes of action
2  against Defendant.  The first is a claim for benefits under ERISA.
3  The second is a claim for declaratory and injunctive relief.  Both
4  claims depend on resolution of the central issue described above.
5  Defendant now moves to dismiss.

6

7  **III.   LEGAL STANDARD**

8    A motion to dismiss under Federal Rule of Civil Procedure
9  12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.
10 Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based
11 on the lack of a cognizable legal theory or the absence of
12 sufficient facts alleged under a cognizable legal theory."
13 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
14 1988).  "When there are well-pleaded factual allegations, a court
15 should assume their veracity and then determine whether they
16 plausibly give rise to an entitlement to relief."  Ashcroft v.
17 Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
18 must accept as true all of the allegations contained in a complaint
19 is inapplicable to legal conclusions.  Threadbare recitals of the
20 elements of a cause of action, supported by mere conclusory
21 statements, do not suffice."  Id. (citing Bell Atl. Corp. v.
22 Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a
23 complaint must be both "sufficiently detailed to give fair notice
24 to the opposing party of the nature of the claim so that the party
25 may effectively defend against it" and "sufficiently plausible"
26 such that "it is not unfair to require the opposing party to be
27 subjected to the expense of discovery."  Starr v. Baca, 652 F.3d

28

1   1202, 1216 (9th Cir. 2011).[2]

2

3   **IV.**   **DISCUSSION**

4         The disputed language at issue in this case -- the plan's

5   definitions of "Residential Treatment Facility" and "Behavioral

6   Health Provider/Practitioner" ("BHP") -- reads:

7         Residential Treatment Facility (Mental Disorders)

8             This is an institution that meets all of the
            following requirements:
9

10      •    On-site licensed Behavioral Health Provider 24
            hours per day/7 days a week.[3]
11
            . . .
12
        •    Meets any and all applicable licensing
13           standards established by the jurisdiction in
            which it is located.
14

15        Behavioral Health Provider/Practitioner

16      •    A licensed organization or professional
            providing diagnostic, therapeutic or
17           psychological services for behavioral health
            conditions.

18   MTD at 3; ECF No. 24-1 ("Sparks Decl.") Ex. A ("Elizabeth L. Plan")

19   at 94 (Residential Treatment Facility definition), Ex. B ("M.M.

20   Plan") at 93 (same); Elizabeth L. Plan at 80 (BHP definition), M.M.

21   Plan at 80 (same).

22        To state a claim for benefits under ERISA, plan participants

23   and beneficiaries have to plead facts making it plausible that a

24   ────────────
     [2] The Court declines to address the parties' dispute over which
25   ERISA standard of review -- de novo or abuse of discretion --
     should apply in this case.  Even on a de novo standard, the Court
26   concludes (as explained below) that the plan is unambiguous, and
     Defendant's interpretation of its terms is correct.
27
     [3] In reference to this bullet point's being the basis of
28   Plaintiffs' exclusion for coverage, the parties and the Court call
     it the "24/7 exclusion" or the "24/7 requirement."

United States District Court
For the Northern District of California

provider owes benefits under the plan.  See 29 U.S.C. §
1132(a)(1)(B); Iqbal, 556 U.S. at 677.  In interpreting an ERISA
plan, the Court must apply contract principles derived from state
law, guided by policies expressed in ERISA and other federal labor
law.  Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d
982, 985 (9th Cir. 1997).  In doing so, the Court must interpret
the plan's terms in an ordinary and popular sense, as would a
person of average intelligence and experience.  Id. (citing Evans
v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990)).

     In resolving disputes over ERISA plans, the Court must look
first to the agreement's specific language and determine the
parties' clear intent, relative to the context giving rise to the
language's inclusion.  Id. (citing Armistead v. Vernitron Corp.,
944 F.2d 1287, 1293 (6th Cir. 1991)).  Finally, the Court must
construe each provision consistently with the entire document such
that no provision is rendered nugatory.  Gilliam v. Nev. Power Co.,
488 F.3d 1189, 1194 (9th Cir. 2007) (citing Richardson, 112 F.3d at
985).

**A.   Plain Language and Interpretation Under ERISA**

     Plaintiffs argue first that the Court should apply the
interpretation they supplied in the first round of briefing on
Plaintiffs' original complaint: essentially, that the plan does not
require a BHP to be on-site 24/7 if the facility is properly
licensed under state law, since the facility itself could be an
"organization" under the plan's definition of a "BHP."  ECF Nos. 24
("MTD I"), 27 ("Opp'n I"); see supra at 4 (providing the definition
of "BHP").  The Court rejected that interpretation in its December
17, 2013 Order Granting Defendant's Motion to Dismiss.  ECF No. 36

1  ("Dec. 17 Order").

2       The Court reiterates that its rejection was based on

3  principles of contract interpretation.  If the licensed residential

4  treatment facility is itself the on-site licensed organization per

5  the definition of BHP, as Plaintiffs submit, then there would be no

6  reason for the plan to include the 24/7 requirement, because

7  satisfaction of the plan's licensing requirement would always

8  satisfy the 24/7 BHP requirement.  Dec. 17 Order at 7.  Adopting

9  Plaintiffs' interpretation of the plan would render the 24/7

10  exclusion nugatory and incomprehensible, because the plan clearly

11  establishes two distinct requirements.  If satisfaction of the

12  licensure requirement alone would meet the 24/7 BHP requirement,

13  the 24/7 exclusion would be meaningless.  Dec. 17 Order at 7

14  (citing Gilliam, 488 F.3d at 1194; Richardson, 112 F.3d at 985).

15  Plaintiffs' argument on this point still fails.

16       Plaintiffs' second argument is that satisfaction of the

17  licensure requirement would not necessarily satisfy the 24/7

18  requirement.  Opp'n at 6-7.  On this point, Plaintiffs seem to

19  contend that the Court's December 17 Order held that compliance

20  with Utah licensure laws alone could satisfy the plan's

21  requirements.  Apparently seeking to find some contradiction in

22  that Order, Plaintiffs proceed from this premise to discuss Utah

23  licensing law, concluding that under Utah law, the residential

24  treatment program -- as opposed to an organization, facility, or

25  professional -- is what obtains licensure to operate a residential

26  mental health treatment facility.  And under Utah law, as

27  Plaintiffs explain, a licensed program may or may not be an

28  organization or professional who provides diagnostic, therapeutic,

**United States District Court**
For the Northern District of California

1   or psychological services for behavioral health conditions. Id. at

2   10.  Therefore, Plaintiffs conclude, a covered residential

3   treatment facility's satisfaction of "any and all" licensure

4   standards only requires the facility to be run by a licensed

5   "program."  Reading the December 17 Order as having made that

6   improper conclusion, Plaintiffs contend that the Court was wrong.

7   As explained below, the Court disagrees.

8        The Court finds, as a preliminary matter, that Plaintiffs

9   appear to have misread the Order.  As explained above, the Court's

10  statement that a licensed residential treatment facility would

11  itself always satisfy the 24/7 requirement was an explanation,

12  provided through a hypothetical statement, of why Plaintiffs'

13  argument was incorrect under principles of contract interpretation.

14       Substantively, the Court does not find Plaintiffs' argument

15  convincing, especially since their logical conclusion is that the

16  plan's licensure requirement and 24/7 exclusion must both be

17  distinct.  Opp'n at 8 ("Will a program that is properly licensed

18  under Utah law to provide residential treatment necessarily be a

19  licensed organization or professional providing diagnostic,

20  therapeutic or psychological services for behavioral health

21  problems as the [December 17 Order] postulates? No.").  Under these

22  circumstances, the Court finds that Plaintiffs fail to address

23  either "any and all" applicable licensing standards, or the 24/7

24  requirement that remains the subject of this dispute.

25       A covered "Residential Treatment Facility" for mental health

26  treatment must comply with all relevant Utah licensure laws,

27  including those for the provision of mental health services -- not

28  just the bare minimum licensure requirements for a "residential

7

**United States District Court**
For the Northern District of California

1    treatment program."  Mental health services have their own

2    additional licensure requirements under Utah law,[4] and engaging in

3    the practice of mental health therapy without a license is a felony

4    in Utah, per Utah Code sections 58-60-109(1)(a) and 58-60-111(1).

5    The plan requires all covered residential treatment facilities to

6    satisfy all of these licensure standards, meaning those for

7    programs and mental-health-specific treatment facilities alike.

8    Moreover, such compliance remains separate from the 24/7

9    requirement per the plan's terms.  Since Plaintiffs fail to plead

10   that the facilities where they were treated satisfied the 24/7

11   requirement, in addition to the licensure requirements, the Court

12   finds that Plaintiffs fail to state an ERISA claim for benefits

13   under the plan.

14        Plaintiffs' ERISA claim is therefore DISMISSED.  If Plaintiffs

15   can plead facts indicating that the 24/7 requirement was satisfied,

16   they may do so, but any attempts to re-plead failed arguments

17   without new supporting facts may be dismissed with prejudice.

18        **B.    <u>Ambiguity</u>**

19        The Court also finds, again, that the plan's terms are

20   unambiguous.  Ambiguity exists only when an ERISA plan's provisions

21   are subject to two reasonable competing definitions.  <u>Deegan v.</u>

22   <u>Cont'l Cas. Co.</u>, 167 F.3d 502, 507 (9th Cir. 2007).  Plaintiffs

23   claim that an average person of ordinary intelligence and

24   experience could reasonably believe their interpretation of the

25   plan's language, described above.  <u>See</u> <u>supra</u> at 5-8.  The Court is

26   not convinced.  Plaintiffs' alternative interpretations of the plan

27   remains convoluted and unreasonable, and the Court cannot find that

28
_____
[4] <u>See, e.g.</u>, Utah Code §§ 58-60-102(7), -103(1)(a)-(b), -109(1)(a).

**United States District Court**
For the Northern District of California

1  a reasonable person of average intelligence and experience would

2  adopt Plaintiffs' interpretations.   The Court also declines to

3  import extrinsic evidence, such as the opposition brief's

4  referenced, but unattached and unquoted, Utah District Court

5  documents, to find ambiguity here.   Cinelli v. Sec. Pac. Corp., 61

6  F.3d 1437, 1444 (9th Cir. 1995) (holding that consideration of

7  extrinsic evidence is precluded unless a plan's terms are

8  ambiguous).

9        As one change from their prior pleadings, Plaintiffs' FAC now

10  makes the argument, previously raised improperly, that Defendant

11  treated other similarly situated claimants differently under the

12  same plan language.   Plaintiffs now allege, per the experience of a

13  claim-denial expert who assists Defendant's insureds with appeals

14  for denials of coverage, that Defendant has previously paid claims

15  for residential mental health treatment even if the treatment was

16  not provided at a facility with 24/7 BHP staffing.   Opp'n at 11

17  (citing FAC ¶¶ 24-25, 27, 45, 56).   Additionally, Plaintiffs

18  contend that Defendant treated in-network residential treatment

19  facilities differently from non-network facilities.   Id. & FAC ¶

20  28.   None of this supports a finding of ambiguity based on the plan

21  language, which, as noted in this Order and the December 17 Order,

22  the Court finds clear.   See Bergt v. Retirement Plan for Pilots

23  Employed by MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002)

24  (citing Richardson, 112 F.3d at 985) (holding that consideration of

25  extrinsic evidence to interpret plan terms is inappropriate if the

26  plan is unambiguous).   Since the plan is not ambiguous, the Court

27  rejects Plaintiffs' effort to interpret the language through

28  Defendant's alleged actions in other cases.

**United States District Court**
For the Northern District of California

Plaintiffs also revisit their contention that the plan is ambiguous because other sections of Defendant's plans regarding treatment in other types of facilities -- "hospitals," "psychiatric hospitals," and "skilled nursing facilities" -- state specifically that certain other types of 24/7 staffing are required.  Opp'n at 14.  For example, Defendant's definition of "hospital" includes the clause that a "hospital" must provide "twenty-four (24) hour-a-day R.N. [registered nurse] service."  Elizabeth L. Plan at 85-86.  The Court is not convinced that this argument proves the plan's ambiguity.  Those definitions relate to different provisions that are not incorporated into or referenced by the provisions under which Plaintiffs seek coverage.  They therefore do not alter the fact that, as addressed above, the definition of "Residential Treatment Facility" has two distinct requirements for coverage: the licensure requirement and the 24/7 requirement.

Plaintiffs' arguments do not merit reading out one requirement or the other, and they do not prove to the Court that the plan is ambiguous.  The Court therefore rejects Plaintiffs' claims based on these contentions.

**C.   Unpled Claims**

Plaintiffs' opposition brief also raises the possibility that Defendant's allegedly inconsistent treatment of claimants with identical plan language constitutes violations of both Defendant's statutory fiduciary duty under ERISA, as well as regulations concerning ERISA claim processing.  Opp'n at 12-13 (citing 29 U.S.C. § 1104(a)(1)(D); 29 C.F.R. § 2560.503-1(b)(5)).  These are separate allegations from Plaintiffs' claims concerning their denial of benefits under Defendants' plan, and they do not support

1  Plaintiffs' claims based on 29 U.S.C. § 1132(a)(1)(B) (providing

2  that plan participants may recover "benefits due under the terms of

3  [their] plan").  Plaintiffs have leave to amend their complaint to

4  plead these theories properly, but they are instructed to avoid

5  raising new factual and legal allegations in their opposition

6  briefs in future disputes (should they arise).

7      **D.   <u>Declaratory Relief</u>**

8      The Court DISMISSES Plaintiffs' declaratory relief claim

9  because it is based on the same theories as Plaintiffs' dismissed

10  ERISA claim.

11

12  **V.   <u>CONCLUSION</u>**

13      As explained above, Defendant Aetna Life Insurance Co.'s

14  motion to dismiss the above-captioned Plaintiffs' complaint is

15  GRANTED, and the complaint is DISMISSED with leave to amend.

16  Plaintiffs have thirty (30) days to file an amended complaint

17  addressing (1) the fiduciary duty claim they described in their

18  opposition but did not plead, or (2) more narrowly, facts showing

19  that the 24/7 requirement was met, as discussed above.

20      If Plaintiffs fail to file an amended complaint within the

21  allotted time, the Court may dismiss this action with prejudice.

22

23      IT IS SO ORDERED.

24

25  Dated: June 12, 2014      _____

26                            UNITED STATES DISTRICT JUDGE

27

28

United States District Court
For the Northern District of California