IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH L., JAMES L., and OLIVIA L., individually and as representatives of the class of similarly situated individuals; and L.M. and N.M. as guardians of M.M., and as representatives of the class of similarly situated individuals;<br><br>            Plaintiffs,<br><br>    v.<br><br>AETNA LIFE INSURANCE CO.,<br><br>            Defendant. | Case No. CV 13-2554 SC<br><br>ORDER GRANTING MOTION TO DISMISS |

## I.  INTRODUCTION

Now before the Court is Defendant Aetna Life Insurance Co.'s ("Aetna") motion to dismiss Plaintiffs' second amended complaint. ECF Nos. 50 ("SAC"), 55 ("Mot."). The motion is fully briefed, ECF Nos. 56 ("Opp'n"), 57 ("Reply"), and appropriate for decision without oral argument under Civil Local Rule 7-1(b). For the reasons explained below, the motion to dismiss is GRANTED.

## II.  BACKGROUND

The facts of this case have been exhaustively summarized in two prior orders granting motions to dismiss, and the Court need

not repeat them at length here.  See ECF Nos. 36 ("First Dismissal Order"); 47 ("Second Dismissal Order").

In short, Plaintiffs Olivia L. and M.M. challenge Aetna's denials of coverage for residential mental health treatment under two health benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  29 U.S.C. § 1001, et seq.  Aetna denied coverage because it determined the residential mental health treatment facilities at issue did not satisfy the plans' requirement that covered facilities be staffed 24/7 with licensed mental health professionals.  The parties refer to this as the "24/7 requirement" and the Court will do so as well.  The nub of the dispute is whether the plans demand such 24/7 staffing in addition to the other requirements.  Aetna maintains that they do. Plaintiffs assert that Aetna's position is unsupported by the plans' plain language.

The Court has twice granted motions to dismiss Plaintiffs' complaint with leave to amend.  In the most recent dismissal, the Court granted leave to amend on two narrow points.  First, the Court granted leave to amend to plead that the 24/7 requirement is satisfied by the residential mental health treatment facilities. In so doing, the Court warned that "any attempts to re-plead failed arguments without new supporting facts may be dismissed with prejudice."  Second Dismissal Order at 8.  Second, the Court granted leave to amend to assert a previously unpleaded claim for breach of fiduciary duty.

Now Aetna seeks dismissal with prejudice on the grounds that (1) Plaintiffs have again failed to plead that the 24/7 requirement is satisfied, and (2) their breach of fiduciary duty allegations

2

suffer from several factual and legal defects.  Plaintiffs oppose.

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

The relevant plan language -- the plans' definitions of "Residential Treatment Facility" and "Behavioral Health

3

Provider/Practitioner" ("BHP") -- reads:

<u>Residential Treatment Facility (Mental Disorders)</u>

 This is an institution that meets all of the following requirements:

- On-site licensed Behavioral Health Provider 24 hours per day/7 days a week.

- . . .

- Meets any and all applicable licensing standards established by the jurisdiction in which it is located.

<u>Behavioral Health Provider/Practitioner</u>

- A licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions.

Second Dismissal Order at 4.

 To state a claim for benefits under ERISA, plan participants and beneficiaries have to plead facts making it plausible that a provider owes benefits under the plan. <u>See</u> 29 U.S.C. § 1132(a)(1)(B); <u>Iqbal</u>, 556 U.S. at 677. In interpreting an ERISA plan, the Court must apply contract principles derived from state law, guided by policies expressed in ERISA and other federal labor law. <u>Richardson v. Pension Plan of Bethlehem Steel Corp.</u>, 112 F.3d 982, 985 (9th Cir. 1997). In doing so, the Court must interpret the plan's terms in an ordinary and popular sense, as would a person of average intelligence and experience. <u>Id.</u> (citing <u>Evans v. Safeco Life Ins. Co.</u>, 916 F.2d 1437, 1441 (9th Cir. 1990)).

 In interpreting an ERISA plan, the Court must look first to the agreement's specific language and determine the parties' clear intent, relative to the context giving rise to the language's inclusion. <u>Id.</u> (citing <u>Armistead v. Vernitron Corp.</u>, 944 F.2d

4

1287, 1293 (6th Cir. 1991)).  Finally, the Court must construe each provision consistently with the entire document such that no provision is rendered nugatory.  <u>Gilliam v. Nev. Power Co.</u>, 488 F.3d 1189, 1194 (9th Cir. 2007) (citing <u>Richardson</u>, 112 F.3d at 985).

### A.     The 24/7 Requirement

Plaintiffs begin by reiterating their now-familiar argument that the plans do not require a BHP to be on-site 24/7 if the facility is properly licensed under state law, since the facility itself could be an "organization" under the plans' definition of a "BHP."  Opp'n at 6-7.  The Court has rejected this argument twice before based on principles of contract interpretation, and the Court now rejects it for a third and final time.  Plaintiffs have repeatedly misunderstood the Court's conclusion, so while the Court's interpretation has not changed, the Court will explain matters more exhaustively this time.

The plans' definition of a BHP is broad, and includes licensed organizations or professionals "providing diagnostic, therapeutic or psychological services for behavioral health conditions." Second Dismissal Order at 4.  As the Court has previously explained, there are problems with Plaintiffs' interpretation of "organization" in the definition of a BHP, but even assuming for the sake of argument that Plaintiffs are right and a facility can fall within the plans' definition of BHP, the remainder of their interpretation remains flawed.  <u>See</u> First Dismissal Order at 8-9. Aside from the definition of a BHP, the plans define a "Residential Treatment Facility" as "an institution" that has both (1) an "[o]n-site licensed Behavioral Health Provider 24 hours per day/7 days a

week" and (2) meets "any and all" licensing standards in the jurisdiction in which it is located.  Second Dismissal Order at 4.

The problem with Plaintiffs' view arises when trying to harmonize the definition of BHP with the 24/7 requirement. Assuming for the sake of argument that the facilities here, as Plaintiffs argue, meet the definition of a BHP, the Court cannot imagine what it would mean for the facilities to be "on-site . . . 24 hours per day/7 days a week." Id.  By definition a facility is on-site 24/7 because a facility is a site.  In other words, reading the words "Behavioral Health Provider" in the 24/7 requirement to include facilities is to simultaneously read "[o]n-site" and "24 hours per day/7 days a week" out of the plan, because such terms have no meaning when applied to facilities.  Id.  Such an interpretation would also read the word "licensed" out of the 24/7 requirement because to be a BHP an organization must already be "licensed" -- a requirement the definition of BHP does not impose on professionals.  As a result, Plaintiffs' interpretation fails to accord with common sense, let alone the rules of contract interpretation.  See Gilliam, 488 F.3d at 1194.

Plaintiffs' detour into the Utah Administrative Code and a recent case, Lynn R. v. ValueOptions, No. 2:12-CV-1201 TS, 2014 WL 4232519 (D. Utah Aug. 26, 2014), does not alter this conclusion. In Lynn R., as in this case, the plaintiff challenged the denial of coverage for residential mental health care.  The plan documents provided coverage for residential treatment centers, which the plan defined as having "a level of care that requires 24-hour on-site supervision as well as an array of therapeutic activities and education (as appropriate)." Id. at *2.  Finding this language

6

ambiguous, the Court relied on dictionary definitions and Utah regulations in concluding that "[w]hile supervision involves some degree of authority, the term does not necessarily connote formal qualifications held by the person who supervises." Id. at *8-9. As a result, the Court rejected the Plan's interpretation that the "on-site supervision" language required the presence of licensed professionals 24 hours a day. Id.

Plaintiffs argue that Lynn R. "provides another basis for the Plaintiffs' argument that satisfying Utah's licensing requirements for being a residential treatment center does not always satisfy the separate requirement that a residential treatment facility must provide an 'on-site licensed Behavioral Health Provider 24 hours per day/7 days a week.'" Opp'n at 7. But that is irrelevant. As the Court has pointed out before, this argument rests on Plaintiffs' misinterpretation of the Court's prior orders. See Second Dismissal Order at 6-7. Neither the parties nor the Court has said the 24/7 requirement is rendered nugatory under Plaintiffs' interpretation because Utah law already requires on-site BHPs 24/7 (and thus would be required to satisfy the "any and all applicable licensing standard" requirement). Id. at 4. Instead, the problem with Plaintiffs' interpretation is and always has been that it reads the words "on-site," "licensed" and "24 hours per day/7 days a week" out of the plan, and would thus allow a facility to only satisfy the requirement it meet "any and all" state licensing standards. But as the Court has repeatedly found and the plans' unambiguous language explains, the plan imposes two distinct requirements: compliance with the 24/7 requirement and all local licensing requirements. Id. In other words, because a

7

facility will always satisfy the 24/7 requirement, Plaintiffs' reading leaves "no reason . . . to include the 24/7 Exclusion because satisfaction of the plans' licensing requirement" alone would be sufficient.  First Dismissal Order at 7.

Although Plaintiffs argue in their opposition that "[t]he SAC pleads facts that demonstrate the two facilities at issue in this case, New Haven and Waterfall Canyon, satisfied the requirement that those facilities provide an 'on-site licensed Behavioral Health Provider 24 hours per day/7 days a week,'" the SAC does no such thing.  Opp'n at 8.  Instead, the facts alleged in the SAC would only satisfy the 24/7 requirement only if the Court accepted Plaintiffs' unreasonable interpretation of the plan.  <u>See</u> SAC ¶¶ 21, 41-44, 58-62.  The Court has rejected this flawed interpretation and thus finds that Plaintiffs have failed to plead the satisfaction of the 24/7 requirement.

Plaintiffs' remaining arguments are unavailing.  First, there is no basis for Plaintiffs' argument (raised for the first time in this, the third motion to dismiss on this very issue) that Aetna's argument in this case is simply a post-hoc rationalization for its denial of benefits not raised in the pre-litigation appeals process.  On the contrary, Plaintiffs' own allegations show that "Aetna denied coverage . . . on the basis that the facility did not have a licensed health care professional on-site 24 hours per day/7 days a week and, therefore, . . . the provider was not eligible for coverage under the medical benefit plan Aetna insures or administers."  SAC ¶ 8; <u>see also</u> <u>id.</u> at ¶¶ 43, 58-62.  As a result, this is not a case where "an ERISA plan administrator [asserted] a reason for denial of benefits that it had not given during the

8

administrative process." Harlick v. Blue Shield of Cal., 686 F.3d 699, 719-20 (9th Cir. 2012).

Furthermore, Plaintiffs are wrong to suggest that the Court has held them to a higher pleading requirement than the standard in Federal Rule of Civil Procedure 8(a).  In its last order granting Aetna's motion to dismiss, the Court granted leave to amend to "plead facts indicating that the 24/7 requirement was satisfied." Second Dismissal Order at 8.  In Plaintiffs' view this is improper because the existence of additional facts beyond those pleaded cannot be evaluated without denying the motion to dismiss and allowing the parties to collect and analyze the pre-litigation appeal documents and the facilities' licensure.  See Opp'n at 9-10. Again Plaintiffs have misread the Court's orders.  In giving Plaintiffs another chance to plead facts showing the satisfaction of the 24/7 requirement, the Court was not asking Plaintiffs to provide facts showing that they satisfy the 24/7 requirement as they (mistakenly) interpret it.  Instead, the Court was simply giving Plaintiffs an opportunity to "plead sufficient facts" demonstrating they have satisfied the 24/7 requirement as the Court has held it must be interpreted.  See Iqbal, 556 U.S. at 687. Because Plaintiffs have not done so, instead opting to simply "re-plead failed arguments without new supporting facts," these claims are DISMISSED WITH PREJUDICE.  Second Dismissal Order at 8; see also Foman v. Davis, 371 U.S. 178, 182 (1962) (suggesting dismissal with prejudice is appropriate in light of "repeated failure to cure deficiencies by amendments previously allowed . . .").

### B. Breach of Fiduciary Duty

The Court's prior dismissal order granted Plaintiffs leave to

amend to plead a claim for equitable relied based on alleged violations of fiduciary duty first referenced in their opposition to Aetna's second motion to dismiss. Second Dismissal Order at 8. Plaintiffs' theory is that in processing claims, Aetna improperly distinguishes between network and non-network facilities by requiring only non-network facilities satisfy the 24/7 requirement. In Plaintiffs' view this is inconsistent with the plan language and results in Aetna being unjustly enriched Aetna at Plaintiffs' expense. As a result, Plaintiffs seek "appropriate equitable relief" under 29 U.S.C. Section 1132(a)(3).

The problem with this theory is it too depends on Plaintiffs' mistaken reading of the 24/7 requirement. Plaintiffs' view is that by applying the 24/7 requirement to only non-network facilities, Aetna is able to "line its own pockets and deny claims to some participants and beneficiaries . . . ." Opp'n at 11; see also SAC ¶ 83-86 (arguing that this distinction resulted in Aetna "unjustly enrich[ing] itself at claimants' expense . . ."). But the only way Aetna could be enriched by such a practice would be if it were required to pay these benefits in the first place. In other words, the only way such a practice would save Aetna money (which it could then unjustly retain) is if Aetna were denying benefits it is obligated to pay under the plan. But as the Court explained above, if a facility does not satisfy the 24/7 requirement then Aetna is not required to pay benefits. As a result, Plaintiffs cannot state a claim for breach of fiduciary duty based on unjust enrichment because Aetna cannot be unjustly enriched by not paying claims it is not required to pay in the first place. In short, if Aetna is only enforcing the 24/7 requirement against claims for treatment at

1 non-network facilities, then that means Aetna and the plan are
2 losing money they should retain by paying benefits not due, not
3 retaining money they should pay out by denying benefits due.  That
4 may be an actionable breach of fiduciary duty on some other theory,
5 but it is not actionable as unjust enrichment.
6      As a result, Aetna's motion to dismiss Plaintiffs' second
7 cause of action is GRANTED.  Nonetheless, amendment may not futile
8 because Plaintiffs may be able to state an actionable theory for
9 breach of fiduciary duty based on these facts.  Accordingly, the
10 Court GRANTS leave to amend on that theory and that theory alone.
11 Any attempt to replead the first cause of action or further
12 reliance on the now-thrice-rejected interpretation of the 24/7
13 requirement will be dismissed with prejudice.

### V.   CONCLUSION

     As explained above, Aetna's motion to dismiss is GRANTED WITH
PREJUDICE as to Plaintiffs' first cause of action and WITHOUT
PREJUDICE as to Plaintiffs' second cause of action.  Leave to amend
is granted <u>solely</u> as to the second cause of action.  Plaintiffs
have thirty (30) days to file an amended complaint.  If Plaintiffs
fail to file an amended complaint within the allotted time or
otherwise fail to comply with the Court's instructions regarding
rejected legal theories, the Court may dismiss this action with
prejudice.
     IT IS SO ORDERED.

     Dated: February 23, 2015                    _____
                                                 UNITED STATES DISTRICT JUDGE